Day, J.
The plaintiff in the original action was a tenant in common, with other parties named in the case, of a tract of land in Union county, which, in a proceeding in partition, was duly sold by the sheriff, for one-third of the purchase money in hand, and the remaining two-thirds on deferred payments of one and two years, as required by the statute. To secure those payments, the purchaser, David D. Welsh, mortgaged the land to the sheriff who made the sale and to his successors in office, for the use of the plaintiff and the other parties entitled to the purchase money. No notes were given; but the mortgage specified the amounts to be paid in one and two years by the purchaser for the land, but did not state specifically to whom the payments were to be made. After both amounts became due, the money was paid to the sheriff of the county for the time being, who held the mortgage as successor of the sheriff who took it, and the mortgage was by him as such successor discharged of record, but he never paid the money to the parties for whose use the mortgage was made.
The plaintiff claims that the payment of the money to the sheriff, and his cancellation of the mortgage, in no way affects his claim for the purchase money of the land sold in the proceedings in partition, nor his right to enforce the mortgage given by the purchaser for its payment. Here, then, lies the main question in the case : did the payment to the sheriff discharge the liability of the purchaser and *411 mortgagor ? The answer to this question depends much upon the legal right of the sheriff to collect and receive the amount secured by the mortgage. This cannot be determined without recurring to the statutes under which the proceedings were conducted.
The tenth section of the act of 1831, “ to provide for the partition of real estate” (S. &C. 897), is as follows : “That on return of the sheriff, of his proceedings, the same shall be subject to the examination of the court; and if the sale has been made, and the same is approved by the court, the sheriff, on receiving payment of the consideration money, or taking sufficient security therefor, to the satisfaction of the court, shall execute and deliver a deed or deeds to the purchaser or purchasers of the estate or estates so sold. And the said money or securities shall be distributed and paid by order of said court to and amongst the several parties entitled to receive the same, in lieu of their respective parts or proportions of said estate or estates, according to their just rights and proportions.”
The act of 1831 was amended in 1851 (S. & C. 901), as follows : “That in all sales made by the sheriff pursuant to an order in case of partition, unless the court shall, by special order, direct and require, on good cause shown, the sale to be made for cash down, the purchase money shall be payable, one-third on the day of sale, one-third in one year, and one-third in two years thereafter, with interest; the deferred payments to be secured to the parties, agreeably to the respective interests, according to the tenth section of the act aforementioned.”
From these provisions it is clear, that, whether the “sale be made for cash down,” or in part on deferred payments, the amount paid at the time of sale may be received of the purchaser by the sheriff. It is equally clear that the deferred payments are “ to be secured to the parties,” and that such securities are to be taken by the sheriff, “to the satisfaction of the court,” and, with the money received, are to be distributed “to and amongst the several parties entitled to receive the same, in lieu of their respective parts and *412 proportions ” of tire estate. The plain object and purpose of the statute is, when the parties are divested of their land by the sheriff’s deed, to give them, in lieu thereof, the monpy and securities received therefor. This obvious intent excludes the idea that the sheriff is to collect and receive the money secured to be paid to the parties. Clearly the statute does not cast upon him this duty. At most it but makes him the custodian of the securities, with the duty of delivering them to the parties entitled to receive them. If he might collect the amount due, and thereby discharge the securities, he could convert the statutory security, taken “in lieu” of the land, to that of his official responsibility only. The statute, in guarding the rights of the parties to the partition, confers on him no such power ; on the contrary, it would be against the manifest spirit and policy of the statute. Nor is there anything in the order of the court requiring the mortgage security, or in the form of the mortgage as made, to confer on the sheriff the right and power of collecting and receiving the amounts secured thereby. The order of the court, directing the sheriff to require the “purchaser to execute and deliver to him a mortgage ” to secure the deferred payments, is entirely consistent with the statutory idea that the mortgage, to be executed and delivered to him by the purchaser, should be made to and payable to the parties entitled, under the statute, to receive the securities in lieu of the land, The mortgage, as framed, is for the use of these parties specifically. At most the sheriff obtained but a naked legal title, while the full equity is conveyed to these parties. Nor does it provide that the money secured thereby should be paid to the sheriff, but rather, by clear implication, to the parties entitled thereto. The purchaser could not, by his own act, divert the fund from the parties to whom by law he was bound to pay it, by the creation of a trustee to receive it for them, and thus discharge his liability. The debt he owed was the purchase money of the land. The mortgage was made to secure the payment of this specific debt to these specific parties. The mortgage was made by the purchaser of the land in form tc *413 a party in the nature of a trustee to hold a naked title only. The case is clearly one where, if the purchaser pays to the trustee, he is not discharged until the money is received by the parties entitled thereto, and to whom it was his duty to pay it. He was responsible for its proper application. For he entrusted the money to the sheriff: the parties entitled thereto did not.
Nor is the case changed by the fact that the mortgage was drawn by the attorney for the parties in the partition case: for, as we have seen, there is nothing in the order of the court or the frame of the mortgage directly, or by implication, changing the statutory liability of the purchaser to pay the deferred payments to the parties entitled thereto. Moreover, the authority of an attorney, under a general employment to procure partition of lands, to make the payments other than as provided by the statute, may well be doubted.
The view we have taken of the case renders it unnecessary to consider how the word “successors” affected the mortgage, or the fact that the money was paid to the successor of the sheriff who took the mortgage; for, if pay ment to the latter was unauthorized, much more was it to the former.
Some of the defendants were purchasers of parts of the land in controversy of Welsh before the mortgage was canceled by the sheriff, and some afterwards; but, in either case, they were affected with notice of the rights of the parties in the partition case; for the character of the title was matter of record of which they were bound to take notice.
It results that the payment made to the sheriff and his cancellation of the mortgage did not affect the rights of the plaintiff below; and that the district court did not err in upholding the lien of the parties in partition on the land sold for the amount due them on the deferred payments. The judgment, must, therefore, be affirmed.
Welch, C. J., and White, McIlvaine and West, JJ., concurred.